# EXHIBIT A

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
WILLIAM B. RICHARDS, JR. (SBN 298552)
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| Debra Murphy, Robin Ferguson, and Andrew Quinn, on behalf of themselves, all others similarly situated, and the general public, | Case No.: |
| | <u>CLASS ACTION</u> |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| IdeaVillage Products Corp., a New Jersey Corporation, | |
| Defendant. | |

Plaintiffs Debra Murphy, Robin Ferguson, and Andrew Quinn (collectively, "Plaintiffs"), on behalf of themselves, all others similarly situated, and the general public, hereby allege against Defendant IdeaVillage Products Corp. ("Defendant") the following upon their own knowledge, or where they lack personal knowledge, upon information and belief including the investigation of their counsel.

## NATURE OF THE ACTION

1.      This is a class action against Defendant arising out of the sale and marketing of Copper Fit™ athletic compression products, each of which incorporates a "copper-infused" fabric (collectively, the "Copper Fit Products" or "Products").[1]

2.      Through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, Defendant commenced marketing Copper Fit Products as "advanced cutting-edge compression garments designed to help relieve muscle and joint soreness."[2]  Specifically, Defendant claims that its elbow and knee sleeves "provide support for muscle stiffness," "reduce recovery time of muscles," "support improved oxygenation of working muscles," and "help prevent strain and fatigue," in addition to other representations.[3]  Similarly, Defendant claims that its Copper Fit Back Pro will, among other benefits, "provide[] lower back support for greater mobility and comfort," "provide everyday support and relief for lower back muscles," and provide "maximum comfort and support for lower back muscles."[4]

3.      Defendant's representations and claims, however, are false and misleading. Contrary to Defendant's representations, the Copper Fit Products do not aid in relieving pain, let alone more chronic and debilitating pain.  Nor do they provide relief for muscle and joint soreness and pain, relieve muscle and joint stiffness, reduce recovery time of muscles, improve circulation and oxygenation of muscles, prevent strain and fatigue,

---

[1] The Copper Fit Products include, but are not limited to, Defendant's "Copper Fit Elbow Sleeve," "Copper Fit Knee Sleeve," and "Copper Fit Back Pro."
[2] https://www.youtube.com/watch?v=LXnFkXxOWXc (last visited July 28, 2015).
[3] https://www.getcopperfit.com/Index.dtm (last visited July 28, 2015).
[4] https://www.copperfitback.com/?mid=6790139 (last visited July 28, 2015).

1

and/or provide essential or therapeutic nutrients for the body. In fact, clinical tests have found no meaningful therapeutic effect for copper concerning pain, inflammation, physical functioning, and stiffness beyond that of a placebo effect for patients with pain symptoms.

4.     Defendant's hoax involves numerous false and misleading statements concerning its Products that have injured Plaintiffs and the Class (defined herein) by inducing them to purchase a worthless and/or overpriced product. Defendant does so with one goal in mind – to reap enormous profits at the expense of unsuspecting consumers in need of muscle and joint pain relief. Defendant, however, should be held accountable and liable for deceptively marketing and selling of Copper Fit Products.

5.     Defendant knew or should have been aware of the misleading nature in the representations regarding the efficacy of copper-infused compression fabric on pain relief, accelerations in recovery, improvement of oxygenation of muscles, strain and fatigue prevention, increased mobility, supplementation of essential nutrients to the body, and injury management.

6.     Had Plaintiffs and Class Members known the Copper Fit Products do not provide pain and soreness relief, accelerate muscle recovery, prevent muscle strain and fatigue, supply essential nutrients, increase mobility, and provide injury management over competing (copper-free) products, they would not have purchased, or would not have paid as much for, the Copper Fit Products.

7.     Plaintiffs assert claims on their own behalf and on behalf of a Nationwide Class, and California Sub-Class, all defined herein, of individuals who, within the relevant statute of limitations period, purchased Copper Fit Products for Defendant's negligent misrepresentation; unjust enrichment; and violation of the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.; California's Breach of Express Warranty, Cal. Com. Code § 2313; California's Breach of Implied Warranty of Merchantability, Cal. Com. Code §§ 2314; California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; California's Unfair Competition Law, Cal. Bus. & Prof.

2

Code §§ 17200, *et seq.*; and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C § 1367.

9.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005 because (a) the matter in controversy, exclusive of interest and costs, exceeds the sum of $5,000,000, and (b) is a class action in which Plaintiffs and two-thirds of the proposed Class Members are from a different state than Defendant.

10.     Personal jurisdiction is derived from the fact that Defendant systematically and continuously conducts business within the state of California, has substantial contacts with the State of California, and publishes advertisements in the State of California to solicit business from California residents.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Venue is further proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 1392(d) because Defendant is subject to this Court's personal jurisdiction.

**PARTIES**

12.     Plaintiff Debra Murphy is a resident of the State of California.

13.     Plaintiff Robin Ferguson is a resident of the State of California.

14.     Plaintiff Andrew Quinn is a resident of the State of California.

15.     Defendant IdeaVillage Products Corp. is a New Jersey corporation that maintains a principal place of business in Wayne, New Jersey and is registered to do business in California under Entity Number C2653590. Defendant is a developer and marketer of some of the most successful consumer products in "As Seen on TV" history,

3

COMPLAINT

including the Copper Fit Products described herein.[5]  Defendant's products are sold in leading discount retailers, major drugstores, and specialty retailers in the United States, including, but not limited to:  Target, Walmart, CVS, Kohl's, Rite Aid, Bed Bath & Beyond, Costco, Walgreens, Kmart, Toys R Us, and more.[6]  Defendant markets its products through various advertising methods including direct response television commercials and infomercials, television shows, and digital advertising that include an active social media presence (i.e. Facebook, Instagram, Twitter, etc.).

### FACTS COMMON TO ALL CAUSES OF ACTION

### False and Misleading Marketing of Copper Fit Products

16.  According to Defendant, "[f]or thousands of years people have appreciated copper's many natural properties.  Ancient Egyptians, Romans, and Aztecs used copper for many purposes, and it is known to possess properties that protect against odors and other benefits."[7]  Defendant further represents that copper is an "[e]ssential nutrient for the body." [8]



**Benefits of Copper**

For thousands of years people have appreciated copper's many natural properties. Ancient Egyptians, Romans, and Aztecs used copper for many purposes[1], and it is known to possess properties that protect against odors and other benefits.

- Copper's natural properties provide protection against bacteria that can cause stains, odors and deterioration of the product. Copper is more effective than stainless steel or silver containing coatings
- Essential nutrient for the human body
- Non-sensitizing, and non-irritating to the skin; not harmful to people or the environment

[1]Gregor Grass, Christopher Rensing, and Marc Solioz, Metallic Copper as an Antimicrobial Surface, Applied Environmental Microbiology, 2011 March; 77(5): 1541-1547 and http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3067274/

---

[5] https://www.ideavillage.com/About-Idea-Village (Last visited July 28, 2015).
[6] *Id.*
[7] https://www.getcopperfit.com/Index.dtm (Benefits of Copper tab) (last visited July 28, 2015);  https://www.copperfitback.com/?mid=6790139 (Benefits of Copper tab) (last visited July 28, 2015).
[8] *Id.*

4

COMPLAINT

17.     Defendant further asserts on a blog that it maintains that "… Ancient Egyptians, Romans and Aztecs used copper for health, wellness, and antimicrobial purposes and it is known to possess antimicrobial properties and enhancement benefits."[9]

18.     Defendant capitalized on the falsehood of metallotherapy – a folklore remedy for pain and inflammation – and implied through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, that the creation of Copper Fit Products is based on scientific principles. For example, Defendant described Copper Fit Products in video advertisements as "advanced cutting-edge compression garments designed to help relieve muscle and joint soreness,"[10] particularly in the elbows, knees, and back, which are commonly associated with rheumatoid arthritis.

 

---

[9] https://web.archive.org/web/20140804135344/http://www.copperfitblog.com/copper-benefits/
[10] *Id*.; *see also* https://www.youtube.com/watch?v=LXnFkXxOWXc (last visited July 28, 2015).

COMPLAINT



19.     Specifically, Defendant claims that "the Copper Fit high-performance compression fabric is blended with therapeutic copper, essential to your body; two technologies combined to help provide support for muscle soreness and aid in recovery and performance,"[11] affirming the implication that Copper Fit Products infused with copper can be absorbed into the human body to provide "essential" and "therapeutic" benefits to consumers.  Screenshots of the advertisement are reproduced below:



[11] https://www.youtube.com/watch?v=LXnFkXxOWXc (last visited July 28, 2015).

COMPLAINT

1
2
3
4
5
6
7
8
9
10



11

20.    Defendant's claim, "two technologies combined to help provide support for muscle soreness and aid in recovery and performance" is a representation that both compression and copper provide support for muscle soreness and aid in recovery and performance.

21.    Defendant's various branded websites are also replete with misleading advertisements touting the efficacy of copper-infused Copper Fit Products:

**www.copperfitback.com**

22.    Defendant claims on one of its branded websites (www.copperfitback.com) that its Products are "infused with the powerful properties of copper,"[12] further implying that the purported presence of copper in the Products will be absorbed into the human body, thereby providing powerful and nutritional benefits to users.

---

[12] https://www.copperfitback.com/?mid=6790139 (video) (last visited July 28, 2015).

COMPLAINT

23. Defendant asserts that the Copper Fit Back Pro will, among other benefits, "provide[] lower back support for greater mobility and comfort," "provide everyday support and relief for lower back muscles," and provide "maximum comfort and support for lower back muscles."[13]



- Maximum comfort & support for lower back muscles
- Anti-odor finishing
- High-wicking fabric
- Form fitting, flexible construction

**ORDER NOW**

COPPER BACK fit PRO · High Quality Compression designed to provide everyday support and relief for lower back muscles

**www.getcopperfit.com**

24. On another branded website (www.getcopperfit.com) Defendant goes so far as to claim that Copper Fit Products will provide "guaranteed relief of muscle aches and pains or your money back."[14]

25. Defendant further represents that the Copper Fit elbow and knee sleeves (which incorporate advanced copper-infused fabric) will purportedly, among other benefits: "provide support for muscle stiffness, and pain," "help to reduce recovery time of muscles," "support improved circulation and oxygenation of working muscles," and "help prevent strain and fatigue by keeping muscles warm."[15]

---

[13] https://www.copperfitback.com/?mid=6790139 (last visited July 28, 2015).
[14] https://www.getcopperfit.com/Index.dtm (Benefits of Copper tab) (last visited July 28, 2015).
[15] https://www.getcopperfit.com/Index.dtm (Features and Benefits) (last visited July 28, 2015).

COMPLAINT

26. Defendant further asserts the elbow and knee sleeves can "relieve muscle and joint pain," "reduce swelling," and provide "faster recovery."[16]







27. In a tab titled "FAQs" Defendant touts the healing, recovery and performance enhancing benefits of Copper Fit Products, and provides directions on how and when to use these Products:[17]

**Is Copper Fit right for me?**

---

[16] *Id.*

[17] https://www.getcopperfit.com/Index.dtm (FAQ) (last visited August 6, 2015)

COMPLAINT

Copper Fit copper-infused compression sleeves are designed for the average person to the accomplished athlete. Anyone seeking support for muscle soreness, aches and pains, or support for improved circulation and recovery time of muscles can use Copper Fit. They are comfortable and lightweight.

**How quickly will I feel the benefits of wearing Copper Fit compression sleeves?**

Everyone is different and just like all injuries, soreness, and aches and pains vary in degree. How much time it takes to feel a benefit in wearing a Copper Fit compression sleeve can range from almost immediately to a gradual improvement over an extended period of time. Remember, compression sleeves are only beneficial when they are worn and when properly sized. Copper Fit compression sleeves offer the highest quality copper-infusion and comfort fit to allow for extended wear.

**When should I wear a Copper Fit compression sleeve?**

Copper Fit compression sleeves can be worn anytime. The Knee Sleeve may be helpful when you are working out, running, walking, or standing for extended periods. The Elbow sleeve may be helpful when you are using your arms for lifting or repetitive movements. Wearing a compression sleeve when you're most active may help stabilize and support muscles and promote circulation. But Copper Fit can be worn when inactive, too, as compression sleeves help keep your muscles warm and may help provide support for pain and soreness. Remember, compression products are only beneficial when they are being worn – and you can wear Copper Fit anytime, anywhere.

28.    To bolster its claims, Defendant enlists several professional athletes, blue-collar workers, and average citizens who have suffered severe injuries in order to impress upon unsuspecting consumers of the purported recovery benefits of Copper Fit Products.

29.    For example, Defendant enlisted well-known retired National Football League ("NFL") quarterback Brett Favre ("Favre") to serve as a Copper Fit Brand Ambassador and spokesperson. Favre has since appeared in numerous Copper Fit commercials and advertisements.  In one commercial for Defendant's elbow and knee sleeves, Favre states:  "I live with muscle and joint soreness every day.  But life after

COMPLAINT

football can be just as tough. That's why for knee and elbow support, I choose Copper Fit."[18]




30. In another commercial advertising the Copper Fit Back Pro, Favre states that because of the Copper Fit Back Pro: "I'm able to do all the things I've done before. Where was this when I was playing in the National Football League?"[19]

---

[18] https://www.youtube.com/watch?v=L2HcwLgpBSY (last visited July 28, 2015).
[19] http://www.ispot.tv/ad/7HgN/copper-fit-back-pro-relief-featuring-brett-favre (last visited July 28, 2015).

COMPLAINT



31.     However, Favre's affiliation with Copper Fit as an Ambassador has less to do with his experience using, or belief in the benefits of, the Products, and more to do with his ability to bring credibility to Defendant's line of copper-infused compression sleeves and athletic socks.

32.     According to Jane Gilmartin ("Gilmartin"), Defendant's Chief Marketing Officer, "Brett Favre is the perfect ambassador for [MicroTouch and Copper Fit]."[20] Noting Favre's successful endorsement of Wrangler jeans, Gilmartin sheds light on Defendant's reasoning for enlisting Favre's endorsement: "He is highly recognized, and he embodies high performance and durability. He brings tremendous credibility to these brands."[21]

33.     Defendant's video commercial for elbow and knee sleeves also features NFL linebacker Bruce Davis who boldly claim: "If I can put this to the rigorous test of

---

[20] *NFL's Favre To Kick Off MicroTouch, Copper Fit Infomercial Campaigns*, HOME BUSINESS WORLD (June 23, 2014), *available at* http://www.homeworldbusiness.com/Appliances/NFL%E2%80%99s-Favre-To-Kick-Off-MicroTouch-Copper-Fit-Infomercial-Campaigns/24873 (last visited July 28, 2015).
[21] *Id.*

COMPLAINT

an NFL athlete, and it can work for me with all the joint pain that I've had, it'll definitely work for you.  I pushed this product to the max and it performed great at every level."[22]

 

34.  In that same commercial, nationally ranked gymnast Sugar Tiner claims that Copper Fit has essentially saved her athletic career, stating:  "The pain I was having literally felt like someone was stabbing me in the knees.  I had pretty much lost all hope.  They said you need to quit, it's not going to get better.  I refused.  To me, I feel really good inside and I've accomplished something, and Copper Fit has helped me do that."[23]

 

---

[22] https://www.getcopperfit.com/Index.dtm (video) (last visited July 28, 2015).
[23] *Id.*

35.     Also in that same commercial, collegiate track star Tahira Kasai characterizes the Products as unreal and ideal for all users:  "I definitely recommend it to anybody to give it a try that has pain.  I noticed that a couple of days after, it didn't really hurt.  And I was like, wait a minute is this real?  This is very real.  And just with the Copper Fit, honestly for the first week, I've noticed results."[24]

 

36.     Concerning the Copper Fit Back Pro, which Defendant characterizes as the "the ultimate copper-infused compression garment," one track runner touts the product's purported immediate effects:  "As soon as I put it on, I felt an immediate change and the support was amazing.  This has given me new confidence."[25]

---

[24] *Id.*
[25] https://www.copperfitback.com/?mid=6790139 (video) (last visited July 28, 2015).

14

COMPLAINT

37.     Defendant also utilizes other athletic endorsers to induce consumers who suffer chronic joint and muscle pain to purchase the Copper Fit Products include, but are not limited to, pole vaulters, body builders, fencers, and kickboxers.[26]







---

[26] https://www.getcopperfit.com/Index.dtm (Features and Benefits) (last visited July 28, 2015).

15

COMPLAINT

38.     Defendant also utilizes testimonials from everyday blue-collar and white-collar workers to help support their claims.  For instance, in Defendant's commercial concerning the elbow and knee sleeves, a residential construction worker, Walt Davenport, likens the products to essentially winning the lottery:  "Construction isn't light duty.  I couldn't pick up a gallon of milk.  Within a few days of using the Copper Fit, the mobility in my arm is a hundred percent better.  It's almost like winning the lottery."[27]



39.     Another construction worker claims life without the Copper Fit Back Pro is akin to torture:  "In construction, I have to move around and be comfortable.  When I put the Copper Fit Back Pro on, I can move around and do the action I need to perform my job.  There's no reason to torture yourself.  Put the product on, give it a try.  You're going to feel better.  It's an old body but I'm feeling young."[28]

40.     In a commercial for Defendant's Copper Fit Back Pro, the same construction worker suggests the Copper Fit Products have vastly increased his energy levels:  "I've

---

[27] https://www.getcopperfit.com/Index.dtm (video) (last visited July 28, 2015).
[28] https://www.copperfitback.com/?mid=6790139 (last visited July 28, 2015).

16

COMPLAINT

had more energy.  My kids can't keep up with me now."[29]  One mother is even quoted as saying: "I'll put it on and almost instantly it makes it go away.  It's like magic."[30]

41.  In addition, Defendant utilizes endorsements of older active individuals to tout the Products' purported benefits.  One recreational tennis player claims:  "Once I put [the Copper Fit Back Pro] on and wore it, and put it into action, THEN I saw the results.  I'm over 60 and imagine that I can do the things that I never thought I would be able to do.  I am so very thankful to Copper Fit Back PRO!"[31]  An elderly basketball player claims the Copper Fit Back Pro is life changing, stating:  "Try the Copper Fit and watch your life change."[32]



42.  In addition, Defendant utilizes a blog, which references numerous athletes, promotional events, and customer reviews to further induce consumer purchases.[33]

---

[29] *Id*. (video).
[30] *Id*.
[31] *Id*.
[32] *Id*.
[33] http://www.copperfitblog.com/ (last visited July 28, 2015).

17

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



### COPPER FIT INVITES YOU TO MEET SUGAR TINER

February 20, 2015 · by admin · in Copper Fit News

California gymnast, Krystal "Sugar" Tiner, was born in Fountain Valley and started her gymnastic career at the age of 8. She has been a competitive gymnast for 10 years and is nationally ranked. "The pain I was having literally felt…



### COPPER FIT INVITES YOU TO MEET BRUCE DAVIS

February 10, 2015 · by admin · in Copper Fit News

Bruce Davis is a former American football defensive end. He played college football at UCLA and was then drafted by the Pittsburgh Steelers. Davis was also a member of the New England Patriots, Denver Broncos, San Francisco 49ers, Oakland Raiders,…



### COPPER FIT INVITES YOU TO MEET TAHIRA KASAI

January 29, 2015 · by admin · in Copper Fit News

You may have recognized D1 Collegiate Track Star, Tahira Kasai, in our Copper Fit commercial. Tahira is known for her successes as a sprinter representing Tulane University. She graduated from Tulane with a B.A. in Psychology. In addition to her…



### COPPER FIT SHINES AMONG ATHLETES

August 15, 2014 · by admin · in Copper Fit News

On her website, The Hollywood Life, Bonnie Fuller dishes news and events related to both athletes and celebrities. In a recent post, Bonnie describes a celebratory event for new and up-and-coming athletes that took place in New York recently. The…



### COPPER FIT SPARKS THE INTEREST OF NBA ATHLETES

July 30, 2014 · by admin · in Copper Fit News

The 5th Annual NBA Pre-Draft Gifting & Styling Suite event, sponsored by Idea Village brands Copper Fit and Micro Touch, welcomed some of the biggest names in NBA Draft picks. Copper Fit knee compression sleeves were given to these rising…

### COPPER FIT IS A "GOOD BUY"

July 23, 2014 · by admin · in Copper Fit Reviews

Recently, the Copper Fit compression sleeves were reviewed on the As Seen On TV Blog and they highlight a number of reasons they gave Copper Fit a "good buy" rating. "…For me, Copper Fit worked great," declares the reviewer. Read…



### THE FASHIONABLE COPPER FIT

July 16, 2014 · by admin · in Copper Fit Reviews

Ninh Nguyen, men's fashion blogger for Another Men's Fashion Blog, recently wrote an article about Copper Fit. In his piece, Ninh says Copper Fit compression sleeves offers a number of features and benefits. View Ninh's article on Copper Fit

18

COMPLAINT



### COPPER FIT GOES FOR THE TOUCHDOWN!

July 9, 2014 · by admin · in Copper Fit News

Atlanta saw the return of the "greatest football camp EVER that is absolutely FREE" last week. SportsRadio 92-9 The Game – and sponsors such as Copper Fit – joined Five Star Athlete Management for "The 2014 New Era All Star…



### COPPER FIT COMPRESSION SLEEVES ARE A GREAT VALUE!

July 2, 2014 · by admin · in Copper Fit Reviews

The Does It Really Work site recently reviewed Copper Fit compression sleeves and begins by stating that, "anything that can help to relieve the aches and pains that most people suffer from time to time in a natural way, is…



### PROFESSIONAL FOOTBALL PLAYERS CONSIDER COPPER FIT

June 15, 2014 · by admin · in Copper Fit Reviews

Examiner.com recently posted an article about Copper Fit and some professional athletes who recently considered the Copper Fit compression sleeves. Several of these football players were given the opportunity to test Copper Fit compression sleeves for their knees before joining…



### COPPER FIT COMPRESSION SLEEVES FOR ANYONE

June 2, 2014 · by admin · in Copper Fit Reviews

On the As Seen on TV Product Review blog, Copper Fit compression sleeves were reviewed and heralded for having copper infusion. In addition to the benefits of the materials that make up the sleeves, the reviewer explains that compression therapy…

### **Defendant's Claims Concerning the Benefits of Copper Fit Products are False and Misleading**

43. The allegations set forth above formed the groundwork of Defendant's extensive marketing campaign to sell Copper Fit Products as "advanced cutting-edge compression garments designed to help relieve muscle and joint soreness" as well as a slew of purportedly inflammation-related health conditions.

44. Defendant's representations and claims concerning the Copper Fit Products, however, are false and misleading. Contrary to Defendant's claims, the Copper Fit

Products do not aid in relieving pain, let alone more chronic and debilitating pain. Nor do they provide relief for muscle or joint stiffness or soreness and pain, reduce recovery time of muscles, improve circulation and oxygenation of muscles, prevent strain and fatigue, reduce swelling, and/or provide essential or therapeutic nutrients for the body. In fact, clinical tests have found no meaningful therapeutic effect for copper concerning pain, inflammation, physical functioning, and stiffness beyond those of a placebo for patients with pain symptoms.

45. Defendant's conduct is particularly egregious as it takes advantage of the anxieties of consumers and, particularly, individuals who suffer from pain or chronic pain on the hunt for pain relief treatment and the elderly who are particularly prone to joint pain issues, such as arthritis.

46. Despite Defendant's representation that "[f]or thousands of years people have appreciated copper's many natural properties" and that its "Copper Fit high-performance compression fabric is blended with therapeutic copper, essential to your body" incorporating "two technologies combined to help provide support for muscle soreness and aid in recovery and performance," copper alone cannot be absorbed into the skin.[34]

47. Further, a deficiency in copper plays no role in the cause of rheumatoid arthritis.[35] Rather, copper deficiency is likely a symptom and a consequence of arthritis and inflammation, not a cause.[36]

---

[34] L.M. Gaetke and C.K. Chow, *Copper toxicity, oxidative stress, and antioxidant nutrients*, Toxicology 189: 147-63 (2003).

[35] http://www.ncbi.nlm.nih.gov/pubmed/8353981/ (last visited July 31, 2015). Claims that copper supplements are effective in the treatment of arthritis have not been accepted by the medical community. http://www.mayoclinic.org/drugs-supplements/copper-supplement-oral-route-parenteral-route/description/drg-20070120 (last visited July 31, 2015).

[36] http://www.dailymail.co.uk/health/article-1221015/Copper-bracelet-arthritis-cure-myth-say-scientists-casting-doubt-multi-million-pound-alternative-healthcare-industry.html (last visited July 31, 2015).

COMPLAINT

48.     Moreover, although copper is an essential trace element, critical for a variety of biological processes; for hemoglobin synthesis, enzyme activation, (i.e., superoxide dismutase), or more generally as a key component of mitochondrial, cytoplasmic, and nuclear enzyme system, copper deficiency is extremely rare and most regular diets provide enough copper to meet the daily requirements.[37]  Supplementation is only needed in patients with other serious medical conditions that affect their gastrointestinal tract and impair their ability to absorb nutrients.  In reality, no modality of treatment has been shown to cure or reverse the changes of arthritis.

49.     Contrary to Defendant's representations regarding the miraculous healing powers of copper, clinical studies demonstrate that copper has been shown to be no better than a placebo for pain relief for patients with arthritis.  One study showed that a copper-infused device does not improve joint swelling and tenderness, physical function, and inflammation.[38]

50.     Stewart Richmond of York University, who led the trial, said: "It appears that any perceived benefit obtained from wearing a … or copper bracelet can be attributed to psychological placebo effects."  Moreover, he added, "I realize this may dispel the myth and puncture a few balloons, but I don't want to see people wasting their money."[39]

---

[37] S.K. Chhetri, R.J. Mills, S. Shaunak, H.C. Emsley. *Copper deficiency*. BMJ. 348: 3691 (2014); K. Dembinski, A.E. Gargasz, S. Dabrow, L. Rodriguez. *Three distinct cases of copper deficiency in hospitalized pediatric patients.* Clin Pediatr (Phila). 51: 759-62 (2012).

[38] S.J. Richmond, S. Gunadasa, M. Bland, H. MacPherson, *Copper Bracelets and Magnetic Wrist Straps for Rheumatoid Arthritis – Analgesic and Anti-Inflammatory Effects: A Randomized Double-Blind Placebo Controlled Crossover Trial*, PLoS ONE 8(9) e71529 (2013), available at Doi:10.1371/journal.pone.0071529, *available at* http://journals.plos.org/plosone/article?id=10.1371/journal.pone.0071529 (last visited July 31, 2015.

[39]     http://www.dailymail.co.uk/health/article-1221015/Copper-bracelet-arthritis-cure-myth-say-scientists-casting-doubt-multi-million-pound-alternative-healthcare-industry.html (last visited July 31, 2015).

21

COMPLAINT

51.    Further, Eric Matteson, M.D., chair of rheumatology at the Mayo Clinic, in Rochester, Minn., called the study "very good evidence about their lack of efficacy." [40]

52.    Jane Tadman from Arthritis Research U.K. has stated that she was not surprised by the study's results. "Copper bracelets and other devices such as copper insoles are heavily marketed towards people with both rheumatoid arthritis and osteoarthritis on a purely anecdotal basis and without any evidence that they actually work, and this study confirms this lack of effectiveness." [41]

53.    Similarly, a 2009 study conducted by Stewart Richmond found that the "[u]se of a copper bracelet over a period of 4 weeks had no demonstrable therapeutic benefit for patients with osteoarthritis. [42]

54.    Further, a randomized double blind placebo controlled trial of Copper-Salicylate gel, which was directly applied to the skin, was no better than a placebo gel as a pain reliever or providing pain relief for patients with osteoarthritis of the hip and knee. [43]

55.    Moreover, the U.S. Food & Drug Administration has chastised the sale of similar type products, including copper bracelets as arthritis remedies noting such conduct constitutes a "health fraud scam," is not likely to help, and "waste[s] money and can lead to serious delays in getting proper diagnosis and treatment…" [44]

---

[40]    http://www.arthritis.org/living-with-arthritis/treatments/natural/other-therapies/magnetic-copper-bracelets.php (last visited July 31, 2015).

[41]    http://www.webmd.com/rheumatoid-arthritis/news/20130918/copper-bracelets-rheumatoid-arthritis (last visited July 31, 2015).

[42]    S.J. Richmond, S.R. Brown, P.D. Campion, *et al. Therapeutic effects of magnetic and copper bracelets in osteoarthritis: a randomised placebo-controlled crossover trial.* Complementary Therapies in Medicine. 17(5–6):249–256 (2009).

[43]    N. Schackel, R.O. Day, B. Kellet, *Copper-salicylate gel for pain relief in osteoarthritis: a randomized controlled trial*, Med. J. of Austl. 167:134-36 (1997), *available at* http://espace.library.uq.edu.au/view/UQ:10099/copper.pdf (last visited July 31, 2015).

[44]    http://www.fda.gov/downloads/ForConsumers/ProtectYourself/HealthFraud/UCM302359.pdf (last visited July 31, 2015).

22

COMPLAINT

56.     Lastly, another study showed that wearing compression shorts during recovery from high intensity exercise "does not lead to greater delivery of energy substrates or enhanced glucose uptake when compared to non-compression clothing."[45]

57.     Furthermore, Defendant's representations that the Product's benefits are "immediate" or "instant" are likewise misleading to unsuspecting consumers.  For instance, in Defendant's commercial for the Back Fit Pro, one user claims:  "As soon as I put it on, I felt an *immediate* change."[46]  Another user claims:  "I'll put it on and almost *instantly* it makes it go away.  It's like magic."[47]  Favre himself proclaims:  "*As soon as I put on Copper Fit*, I feel the support."[48]  A recreational tennis player even claims:  "I was a little skeptical.  But *once I put it on* and wore it, then I saw the results."[49]  However, that commercial includes no disclaimer regarding the amount of time a user must wear the product to experience the product's benefits.

58.     Yet, Defendant's commercial for the compression sleeves states in very small white writing:  "Individual results may vary.  Results not typical.  Studies of compression garments have shown faster relief of muscle soreness and joint pain when worn for 12-48 hours after exercise," indicating that the purported results of the Products are not immediate or instant, but rather take 12-48 hours after exercise in order for users to experience relief.[50] An enlarged screenshot from the video advertisement featuring the purported disclaimer is provided below:

---

[45]     B. Sperlich, D-P Born, K. Kaskinoro, K.K. Kalliokoski, M.S. Laaksonen, *Squeezing the Muscle: Compression Clothing and Muscle Metabolism during Recovery from High Intensity Exercise*, PLoS One 8(4): e60923 (2013), *available at* http://journals.plos.org/plosone/article?id=10.1371/journal.pone.0060923 (last visited July 31, 2015).

[46] https://www.copperfitback.com/?mid=6790139 (video) (last visited July 28, 2015).

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] https://www.getcopperfit.com/Index.dtm (video) (last visited July 28, 2015).

COMPLAINT

59.     Defendant's website for the sleeve products further claims that "[h]ow much time it takes to feel a benefit in wearing a Copper Fit compression sleeve can range from almost *immediately* to a gradual improvement over an extended period of time."[51]  But again, Defendant's nearly illegible disclaimer refutes the purported immediacy of the Products' benefits.[52]

60.     Thus, any suggestion that Copper Fit Products (which incorporate a copper-infused thread) will relieve pain (including arthritis and other chronic joint and muscular pain), relieve muscle or joint stiffness or soreness and pain, reduce recovery time of muscles, improve circulation and oxygenation of muscles, prevent strain and fatigue, reduce swelling, and/or provide essential or therapeutic nutrients for the body are both false and misleading.

**Plaintiffs' Purchases and Experiences with Defendant's Products**

**Plaintiff Debra Murphy**

61.     Within the class period, Plaintiff Murphy purchased one or more of the Copper Fit Products manufactured, marketed, or sold by Defendant described and at issue in this Complaint, including: four knee sleeves in or around November 2014, January 2015, March 2015, and May 2015, for approximately $13 each.

62.     Plaintiff Murphy purchased the Copper Fit Products from Kmart in Riverside, California after viewing various advertisements concerning the Copper Fit Products, including commercials and in-store advertisements referencing the ability to purportedly, among other benefits, provide support for muscle stiffness and pain, reduce

---

[51] https://www.getcopperfit.com/Index.dtm (FAQ) (last visited July 28, 2015).
[52] https://www.getcopperfit.com/Index.dtm (video) (last visited July 28, 2015).

COMPLAINT

recovery time of muscles, support improved circulation and oxygenation of working muscles, help prevent strain and fatigue, prevent chafing and rashes, relieve muscle and joint pain, reduce swelling, provide faster recovery, and provide essential nutrients, prior to the time of purchase and understood them as a representation and warranty by Defendant that the Copper Fit Products were effective for those purposes.

63. Plaintiff Murphy relied on these representations and warranties in deciding to purchase the Copper Fit Products, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Copper Fit Products if she had known that it was not in fact, proven to provide the aforementioned benefits.

64. Plaintiff Murphy used the Copper Fit Products as directed but did not experience any of the purported benefits such as muscle and joint pain and stiffness relief, reduction of recovery time, improved circulation and oxygenation of muscles, strain and fatigue prevention, chafing and rash prevention, swelling reduction, or acceleration in recovery.

65. The Copper Fit Products were useless to Plaintiff Murphy, who would not have purchased the Copper Fit Products or would not have paid as much for the products had she known that they were not effective.

**Plaintiff Robin Ferguson**

66. Within the class period, Plaintiff Ferguson purchased one or more of the Copper Fit Products manufactured, marketed, or sold by Defendant described and at issue in this Complaint, including: four elbow sleeves in or around November 2014, January 2015, March 2015, and May 2015, for approximately $13 each.

67. Plaintiff Ferguson purchased the Copper Fit Products from Kmart in Riverside, California after viewing various advertisements concerning the Copper Fit Products, including commercials and in-store advertisements referencing the ability to purportedly, among other benefits, provide support for muscle stiffness and pain, reduce recovery time of muscles, support improved circulation and oxygenation of working muscles, help prevent strain and fatigue, prevent chafing and rashes, relieve muscle and

joint pain, reduce swelling, provide faster recovery, and provide essential nutrients, prior to the time of purchase and understood them as a representation and warranty by Defendant that the Copper Fit Products were effective for those purposes.

68. Plaintiff Ferguson relied on these representations and warranties in deciding to purchase the Copper Fit Products, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Copper Fit Products if she had known that it was not in fact, proven to provide the aforementioned benefits.

69. Plaintiff Ferguson used the Copper Fit Products as directed but did not experience any of the purported benefits such as muscle and joint pain and stiffness relief, reduction of recovery time, improved circulation and oxygenation of muscles, strain and fatigue prevention, chafing and rash prevention, swelling reduction, or acceleration in recovery.

70. The Copper Fit Products were useless to Plaintiff Ferguson, who would not have purchased the Copper Fit Products or would not have paid as much for the products had she known that they were not effective.

**Plaintiff Andrew Quinn**

71. Within the class period, Plaintiff Quinn purchased one of the Copper Fit Products manufactured, marketed, or sold by Defendant described and at issue in this Complaint, including: one elbow sleeve in or around 2014, for approximately $14.

72. Plaintiff Quinn purchased the Copper Fit Products from What America Buys online after viewing various advertisements concerning the Copper Fit Products, including commercials and online advertisements referencing the ability to purportedly, among other benefits, provide support for muscle stiffness and pain, reduce recovery time of muscles, support improved circulation and oxygenation of working muscles, help prevent strain and fatigue, prevent chafing and rashes, relieve muscle and joint pain, reduce swelling, provide faster recovery, and provide essential nutrients, prior to the time of purchase and understood them as a representation and warranty by Defendant that the Copper Fit Products were effective for those purposes.

COMPLAINT

73. Plaintiff Quinn relied on these representations and warranties in deciding to purchase the Copper Fit Product, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Copper Fit Product if he had known that it was not in fact, proven to provide the aforementioned benefits.

74. Plaintiff Quinn used the Copper Fit Product as directed but did not experience any of the purported benefits such as muscle and joint pain and stiffness relief, reduction of recovery time, improved circulation and oxygenation of muscles, strain and fatigue prevention, chafing and rash prevention, swelling reduction, or acceleration in recovery.

75. The Copper Fit Product was useless to Plaintiff Quinn, who would not have purchased the Copper Fit Product or would not have paid as much for the product had he known that it was not effective.

### **Defendant's False and Misleading Claims are Material**

76. The representations at issue are ubiquitous. In commercial videos and/or infomercials, in retail stores, on the Products' packaging and labeling, and on Defendant's websites, Defendant makes the same representations about Copper Fit Products, namely that the Products relieve pain, including chronic joint and muscular pain and soreness, aid in injury management and/or repair injured tissue, accelerate or speed muscle recovery, support improved oxygenation of working muscles, and help prevent strain and fatigue.

77. All of Defendant's claims challenged herein relate to matters that are material and important to a consumer's purchasing decision, as they concern core claims about the Products which are likely to, and did, influence consumers' purchase of Copper Fit Products.

78. Defendant's marketing, advertising, and packaging materials intended to, and did, induce Plaintiffs and Class Members to rely upon Defendant's representations that Copper Fit Products were effective for its intended use and in the way described.

COMPLAINT

These representations were a substantial factor in causing Plaintiffs and Class Members to purchase Copper Fit Products over other effective pain relievers.

79.    At the time Plaintiffs and Class Members purchased the Copper Fit Products, they were unaware of the fact that: (1) Defendant's claims that Copper Fit Products provide support for muscle stiffness and pain, reduce recovery time of muscles, support improved circulation and oxygenation of working muscles, help prevent strain and fatigue, prevent chafing and rashes, relieve muscle and joint pain, reduce swelling, provide faster recovery, and provide essential nutrients were false and misleading; and (2) Copper Fit Products are not proven effective for their intended use.

80.    If Plaintiffs and Class Members had been aware of the true facts concerning Copper Fit Products, Plaintiffs and Class Members would not have purchased the Products. Plaintiffs and members of the Class have been injured in fact and have suffered out of pocket losses. Plaintiffs and members of the Class therefore seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

## CLASS ACTION ALLEGATIONS

81.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seeks to represent a nationwide class (the "Nationwide Class"), of all persons in the United States who, within the relevant statute of limitations period, purchased one or more Copper Fit Products.

82.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs also seeks to represent a sub-class of all Class Members in California (the "California Sub-Class") who, within the relevant statute of limitations period, purchased one or more Copper Fit Products.

83.    The classes described in this Complaint will be jointly referred to as "Class," and proposed members in the classes will be jointly referred to as "Class Members."

84.     Plaintiffs reserve the right to amend or modify Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

85.     Excluded from the Class are: (i) Defendant and their employees, principals, affiliated entities, legal representatives, successors and assigns; (ii) any entity in which Defendant has a controlling interest, and Defendant's legal representatives; and (iii) the judges to whom this action is assigned and any members of their immediate families.

86.     The Court can define the Class and create additional subclasses as may be necessary or desirable to adjudicate common issues and claims of the Class Members if, based on discovery of additional facts, the need arises.

87.     The members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class Members and their identities are unknown to Plaintiffs at this time but will be determined through discovery.  Upon information and belief and based upon the scope of Defendant's marketing campaign, the Class includes tens of thousands of members.  Accordingly, joinder is impracticable.

88.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including, but not limited to:

    a. Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;

    b. Whether Defendant breached any express warranties made to Plaintiffs and the Class;

    c. Whether Defendant breached an implied warranty of merchantability made to Plaintiffs and the Class;

    d. Whether Defendant was unjustly enriched by its conduct;

    e. Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of Copper Fit Products;

COMPLAINT

f. Whether Defendant violated other consumer protection statutes, false advertising statutes, or state deceptive business practices statutes; and

g. Whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and Class Members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief.

89. Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and Class Members were exposed to Defendant's false, misleading, and deceptive marketing concerning Copper Fit Products and were subject to Defendant's unjust, unreasonable, and unlawful practices.

90. Plaintiffs are adequate representatives of the Class because their interests are consistent with, and not antagonistic to, the interests of Class Members they seeks to represent, they have retained counsels competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.

91. Plaintiffs will fairly and adequately represent and protect the interests of Class Members and common issues predominate.

92. Notice of this class action can be provided to Class Members by techniques and forms similar to those customarily used in other class actions, such as by published notice, Internet notice, first-class mail or a combination thereof, or other means deemed suitable for this Class.

93. Class certification is appropriate because Defendant has acted, or refused to act, on grounds generally applicable to the Class, making class-wide relief appropriate.

94. In addition, the class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for

30

inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## **CAUSES OF ACTION**

### **CAUSE OF ACTION 1**
### **(Magnuson-Moss Warranty Act 15 U.S.C. §§ 2301,** *et seq***.)**

95.    Plaintiffs and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further alleges as follows:

96.    Plaintiffs bring Count I individually and on behalf of members of the Nationwide Class against Defendant.

97.    The amounts in controversy of Plaintiffs' claims are at least or more than the sum or value of twenty-five ($25) dollars.

98.    Defendant's Products are consumer products as defined in 15 U.S.C. § 2301(1).

99.    At all relevant times, Defendant was, and is, a supplier and warrantor as defined in 15 U.S.C. § 2301 (4) and (5).

100.    In connection with the sale of Copper Fit Products, Defendant's written warranties as defined in 15 U.S.C. §2301(6), warranted that the copper-infused Products can: (i) provide support for muscle stiffness, and pain; (ii) help to reduce recovery time of muscles; (iii) support improved circulation and oxygenation of working muscles; (iv) help prevent strain and fatigue; (v) help relieve muscle and joint soreness; (vi) provide lower back support for greater mobility and comfort; (vii) provide everyday support and relief for lower back muscles; (viii) provide maximum comfort and support for lower back muscles; (ix) provide essential nutrients for the body; (x) provide support for muscle soreness and aid in recovery and performance; (xi) reduce swelling; (xii) relieve muscle and joint pain; and (xiii) guaranty relief of muscle aches and pains (collectively, the

31

"Express Warranties" or "Misrepresentations").

101. In fact, Copper Fit Products do not conform to the Express Warranties because each of the Express Warranties is false and misleading. Additionally, clinical studies discussed herein refute these warranties.

102. Additionally, Defendant impliedly warranted, as defined in 15 U.S.C. § 2301(7), in connection with the sale of Copper Fit Products that the Products were of merchantable quality.

103. Defendant breached the warranty implied in the contract for the sale of Copper Fit Products in that the Copper Fit Products are not effective for providing pain relief, including chronic joint and muscular pain; do not aid in injury management and/or repair injured tissue; do not accelerate or speed recovery; do not improve circulation and oxygenation of working muscles; do not reduce swelling; do not prevent chaffing and rashes; and do not provide essential nutrients to the body. Thus, Copper Fit Products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose in that they are not generally recognized among qualified experts as safe and effective for the advertised purposes. Furthermore, the Copper Fit Products do not conform to the promises or affirmations of fact made in the advertisements, packaging, and labeling of the Products. As a result, Plaintiffs and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

104. By reason of Defendant's breach of their express and implied warranties, Defendant violated statutory rights owed to Plaintiffs and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and Class Members.

105. Plaintiffs and Class Members were injured as a direct and proximate result of Defendant's breaches because they would not have purchased or paid as much for Copper Fit Products if the true facts had been known.

32

106.   Prior to filing this action, Plaintiffs, by and through their counsels, provided Defendant with written notice of their claims pursuant to 15 U.S.C. § 2301(e).

## CAUSE OF ACTION II

### (Negligent Misrepresentation)

107.   Plaintiffs and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

108.   Plaintiffs bring Count II individually and on behalf of members of the Nationwide Class against Defendant.

109.   Defendant had a duty to disclose to Plaintiffs and Class Members correct information as to the quality and characteristics of Copper Fit Products because Defendant was in a superior position than Plaintiffs and Class Members such that reliance by Plaintiffs and Class Members were justified.  As the designer, manufacturer, marketer, distributor, or seller of Copper Fit Products, Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

110.   During the applicable Class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of Copper Fit Products, including the alleged benefits from the copper-infused fabric.  Defendant made such false and misleading statements and omissions through a wide range of advertisement medium described herein, with the intent to induce Plaintiffs and Class Members to purchase Copper Fit Products.

111.   Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiffs and Class Members would not realize the alleged benefits represented by Defendant.

112.   Plaintiffs and Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase Copper Fit Products.  Plaintiffs and Class Members would not have purchased Copper Fit Products or paid as much for Copper Fit Products if the true facts had been known.

33

COMPLAINT

**CAUSE OF ACTION III**

**(Unjust Enrichment)**

113. Plaintiffs and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

114. Plaintiffs bring Count III individually and on behalf of members of the Nationwide Class against Defendant.

115. At all relevant times during the applicable Class period, Defendant designed, manufactured, produced, marketed, or sold Copper Fit Products.

116. Defendant directly benefitted at the expense of Plaintiffs and Class Members who paid for Copper Fit Products as a result of Defendant's deceptive, fraudulent, and misleading advertising, marketing, and sales of the copper-infused Products.

117. Plaintiffs and Class Members conferred non-gratuitous benefits upon Defendant by buying and paying the purchase price for Copper Fit Products directly to Defendant. Defendant accepted or retained such non-gratuitous benefits with full knowledge that Plaintiffs and Class Members were not receiving products of the nature and quality that Defendant represented.

118. By virtue of the unlawful conduct described herein, it would be unjust and inequitable for Defendant to retain the non-gratuitous benefits conferred. Therefore, Plaintiffs and Class Members are entitled to, and hereby seek, disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by the Court.

**CALIFORNIA**

**CAUSE OF ACTION IV**

**(Breach of Express Warranty, Cal. Com. Code § 2313)**

119. Plaintiffs and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

120. Plaintiffs bring Count IV individually and on behalf of members of the

34

California Sub-Class against Defendants.

121. By making the Express Warranties, Defendant, as a manufacturer, marketer, distributor or seller, expressly warranted that Copper Fit Products were fit for their intended purpose by making the Express Warranties.

122. The foregoing representations were material because they concerned alleged efficacy of Copper Fit Products regarding the ability to provide pain relief, aid in injury management and/or repair injured tissue; accelerate or speed recovery; and provide essential nutrients to the body. These representations had an influence on consumers' decisions in purchasing Copper Fit Products.

123. Defendant made the above representations to induce Plaintiffs and Class Members to purchase Copper Fit Products. Plaintiffs and the Class Members relied on the representations when purchasing Defendant's Products.

124. In fact, Copper Fit Products do not conform to the above express representations because each of the Express Warranties is false and misleading.

125. Plaintiffs and the Class Members were injured and continued to be injured as a direct and proximate result of Defendant's breach because they would not have purchased Copper Fit Products or paid as much for Copper Fit Products if the true facts had been known.[53]

## CAUSE OF ACTION V

### (Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2313)

126. Plaintiffs and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

127. Plaintiffs bring Count V individually and on behalf of members of the California Sub-Class against Defendant.

128. Defendant, as the designer, manufacturer, marketer, distributor, or seller, impliedly warranted that Copper Fit Products were fit for their intended purpose in that

---

[53] Though, Plaintiffs would still be interested in purchasing Copper Fit Products in the future if these products were represented properly or truthfully.

COMPLAINT

the Products would (i) provide support for muscle stiffness, and pain; (ii) help to reduce recovery time of muscles; (iii) support improved circulation and oxygenation of working muscles; (iv) help prevent strain and fatigue; (v) help relieve muscle and joint soreness; (vi) provide lower back support for greater mobility and comfort; (vii) provide everyday support and relief for lower back muscles; (viii) provide maximum comfort and support for lower back muscles; (ix) provide essential nutrients for the body; (x) provide support for muscle soreness and aid in recovery and performance; (xi) reduce swelling; (xii) relieve muscle and joint pain; and (xiii) guaranty relief of muscle aches and pains. Defendant did so with the intent to induce Plaintiffs and Class Members to purchase Copper Fit Products.

129. Defendant breached the warranties implied in the contract for the sale of Copper Fit Products in that Copper Fit Products could not pass without objection in the trade under the contract description, the goods were not of fair or average quality within the description, and the goods were unfit for their intended and ordinary purpose. As a result, Plaintiffs and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

130. In reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class Members purchased Copper Fit Products to relieve aches and pains, aid in injury management and/or repair injured tissue, accelerate or speed recovery, reduce swelling, and receive essential nutrients.

131. Neither Plaintiffs nor the Class Members altered Defendant's Products after purchase.

132. Plaintiffs and the Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased Copper Fit Products or paid as much for Copper Fit Products if the true facts had been known.

COMPLAINT

## CAUSE OF ACTION VI

### (Consumers Legal Remedies Act, Calif. Civil Code §§ 1750, *et seq.*)

133.   Plaintiffs and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

134.   Plaintiffs bring Count VI individually and on behalf of members of the California Sub-Class against Defendants.

135.   This cause of action is brought pursuant to the Consumers Legal Remedies Act (the "CLRA"), California Civil Code §§ 1750, *et seq.*  Plaintiffs are consumers under California Civil Code §1761(d); Copper Fit Products are goods within the meaning of the Act.

136.   Prior to filing this action, Plaintiffs purchased one or more Copper Fit Products for personal use.

137.   Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in its transactions with Plaintiffs and Class Members which were intended to result in, and did result in, the sale of Copper Fit Products.

138.   CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendant violated this provision by making the Misrepresentations.

139.   CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendant violated this provision by making the Misrepresentations

140.   CLRA § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."   Defendant violated this provision by making the Misrepresentations.

141.   CLRA § 1770(a)(14) prohibits "[r]epresenting that a transaction confers or

involves rights, remedies, or obligations which it does not have or involve." Defendant violated this provision by making the Misrepresentations.

142. CLRA § 1770(a)(16) prohibits "[r]epresenting the subject of a transaction has been supplied in accordance with a previous representation when it has not." Defendant violated this provision by making the Misrepresentations.

143. Defendant violated the CLRA by making false or deceptive or misleading representations about its Copper Fit Products as described above, when it knew, or should have known, that the representations and advertisements were false or misleading.

144. Plaintiffs and Class Members reasonably relied upon Defendant's representations regarding the qualities and attributes of Copper Fit Products.

145. Plaintiffs and Class Members were deceived by Defendant's representations as to the qualities and attributes of Copper Fit Products, including but not limited to the Misrepresentations. Plaintiffs and Class Members would not have purchased Copper Fit Products or paid as much for the Products had they known the true nature of these products. Though, Plaintiffs and Class Members would still be interested in purchasing Copper Fit Products in the future if these Products were represented properly or truthfully.

146. Plaintiffs and Class Members seek an order of this Court awarding Plaintiffs and proposed Class Members prospective and retrospective injunctive relief, and attorneys' fees and costs as allowed by statute. Plaintiffs and Class Members are not seeking damages or punitive damages at this time for their CLRA claim; Plaintiffs and Class Members will seek leave to amend the Complaint 30 days after providing formal notice to Defendant of its intention to seek damages and punitive damages.

147. In addition, the CLRA has enhanced penalties for acts perpetrated against senior citizens and disabled persons. If the defendant's conduct is directed at a class of persons who are senior citizens and/or disabled, a $5,000.00 civil penalty may be awarded to "each class member." Cal. Civ. Code § 1780(b). A "disabled person" is someone who has "physical or mental impairment which substantially limits one of more

major life activities." Cal. Civ. Code § 1761(f), (g). Under California law, individuals suffering from arthritis are "disabled." Defendant's conduct is clearly directed at senior citizens, who are the primary demographic afflicted with arthritis and joint problems, as Copper Fit Products are intended to treat and/or alleviate arthritis. Accordingly, the Court may award a civil penalty of up to $5,000.00 for each Class Member.

## CAUSE OF ACTION VII

### (False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.)

148. Plaintiffs and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

149. Plaintiffs bring Count VII individually and on behalf of members of the California Sub-Class against Defendant.

150. Plaintiffs have standing to pursue this claim because they suffered injury in fact as a result of Defendant's actions as forth herein. Prior to filing this action, Plaintiffs purchased Copper Fit Products in reliance upon Defendant's advertising or marketing claims.

151. Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising under California Business and Professions Code section 17500, *et seq*. (the "Code") because Defendant advertises Copper Fit Products in a manner that is untrue and misleading, and that Defendant knew or reasonably should have known its advertisement to be untrue or misleading. In fact, Defendant's Products fail to perform or conform as advertised because copper-infused products do not provide support for muscle stiffness, soreness, and pain; do not reduce recovery time of muscles; do not improve circulation and oxygenation of working muscles; do not prevent strain and fatigue; do not relieve muscle and joint soreness; do not increase mobility and comfort; do not provide support and relief for lower back muscles; do not provide maximum comfort and support for lower back muscles; do not reduce swelling; do not provide essential nutrients for the body; and do not aid in recovery and performance.

COMPLAINT

152. Defendant's wrongful business practices caused injury to Plaintiffs and Class Members.

153. California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

154. Defendant committed acts of false advertising, as defined by § 17500, by making the Misrepresentations.

155. Defendant knew or should have known, through the exercise of reasonable care that the Misrepresentations were untrue and misleading.

156. Defendant's actions in violation of § 17500 were false and misleading such that the general public is, and was, likely to be deceived.

157. Plaintiffs and Class Members suffered lost money or property as a result of Defendant's FAL violations because they would not have purchased Copper Fit Products if they knew the truth about the Products.

158. Pursuant to Section 17535 of the Code, Plaintiffs and Class Members seek an order of this Court enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

159. Plaintiffs and Class Members also seek an order for disgorgement and restitution of all monies from sale of Copper Fit Products, which were unjustly acquired through its wrongful business practice.

COMPLAINT

## **CAUSE OF ACTION VIII**

### **(Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

160. Plaintiffs and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

161. Plaintiffs bring Count VIII individually and on behalf of Members of the California Sub-Class against Defendant.

162. Defendant is subject to the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

163. Defendant's conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA and FAL (*see infra* at Count VI and VII).

164. Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL by making the Misrepresentations.

165. Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute "unfair" business acts and practices under the UCL. Defendant's conduct offends public policy against false advertising. Federal law states that an advertisement must be truthful, not misleading. Defendant's conduct is also immoral, unethical, and unscrupulous because it seeks to capitalize on consumers' desire for pain relief products through false and misleading representations. Thus, the injuries suffered by Plaintiffs and Class Members outweigh any conceivable benefit to consumers or competition that may derive from Defendant's conduct.

166. Plaintiffs and Class Members suffered lost money or property as a result of Defendant's UCL violations because they would not have purchased Copper Fit Products if they knew the truth about the Products.

167. Plaintiffs and Class Members seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, or fraudulent acts and practices, and to commence a corrective advertising campaign.

41

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class Members request that the Court enter an order or judgment against Defendant including the following:

A. An order certifying that this action is properly brought and may be maintained as a class action;

B. An order appointing Plaintiffs as class representatives of the Nationwide Class and California Sub-Class, and Faruqi & Faruqi, LLP and The Law Office of Ronald A. Marron, APLC as co-counsels for the Class;

C. An order requiring Defendant to bear the costs of Class notice;

D. Restitution in such amount that Plaintiffs and Class Members paid to purchase Defendant's Copper Fit Products;

E. Actual damages, compensatory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

F. Other appropriate injunctive relief;

G. An order declaring Defendant's conduct as unlawful, and an order enjoining Defendant from unlawfully and misleadingly representing Copper Fit Products in violation of state law;

H. An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest on such monetary relief;

I. An order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendant received as a result of the misleading, fraudulent, and unlawful conduct alleged herein.

J. Such other relief to which Plaintiffs and Class Members may be entitled to at law or in equity.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: August 13, 2015

*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF**

42

COMPLAINT

1

**RONALD A. MARRON, APLC**
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
Email: *ron@consumeradvocates.com*

2

3

4

*Counsel for Plaintiffs and
the Proposed Classes*

5

6

**FARUQI & FARUQI, LLP**

7

By: */s/Antonio Vozzolo*

8

Antonio Vozzolo (pro hac vice pending)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Fax:  (212) 983-9331
Email: avozzolo@faruqilaw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

43